UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
INFINITE ALLAH,                               **NOT FOR PRINT OR**
                                              **ELECTRONIC PUBLICATION**

                    Petitioner,

                                              **MEMORANDUM & ORDER**
        -against-                             13-CV-2805 (KAM) (LB)


ROBERT CUNNINGHAM,

                    Respondent.
-----------------------------------X

**MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

        Pro se petitioner Infinite Allah ("petitioner") seeks a
writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the
reasons discussed below, the court concludes that the petition is
time-barred.

                            **BACKGROUND**

        On September 27, 1993,[1] petitioner was convicted of
second-degree murder in Kings County Supreme Court and was
sentenced to 20 years to life imprisonment.  (ECF No. 1, Petition
for Writ of Habeas Corpus ("Pet.") at ¶¶ 1, 3-5.)  On August 28,
1995, the Appellate Division affirmed petitioner's conviction on
direct review.  *People v. Allah*, 631 N.Y.S.2d 248 (N.Y. App. Div.

---

[1] Although petitioner states that he was convicted on September 27, 1992
(Pet. at ¶ 3), two reported appellate decisions confirm that he was
convicted a year later on September 27, 1993.  *See People v. Allah*, 666
N.Y.S.2d 933 (N.Y. App. Div. 2d Dep't 1998); *People v. Allah*, 631
N.Y.S.2d 248 (N.Y. App. Div. 2d Dep't 1995).

2d Dep't 1995). On November 15, 1995, the New York Court of Appeals denied petitioner's request for leave to appeal. *People v. Allah*, 661 N.E.2d 1383 (N.Y. 1995). Petitioner did not file a petition for a writ of certiorari from the United States Supreme Court. (Pet. at ¶ 10.)

Petitioner sought post-conviction relief on three occasions in state court. First, on May 18, 1995, with his direct appeal still pending, petitioner filed a motion to vacate the judgment pursuant to N.Y. Crim. Proc. Law § 440.10, which was denied by the Kings County Supreme Court on September 12, 1995. (*Id.* at ¶ 12.) Second, on August 12, 1997, petitioner filed a petition for a writ of error coram nobis (*id.*), which was subsequently denied by the Appellate Division on January 12, 1998. *People v. Allah*, 666 N.Y.S.2d 933 (N.Y. App. Div. 2d Dep't 1998).[2] Third, petitioner filed a motion seeking forensic testing and comparison of evidence pursuant to N.Y. Crim. Proc. Law § 440.10, which was denied by the Kings County Supreme Court on June 21, 1999. (Pet. at ¶ 12.)

---

[2] This petition was lodged directly with the appellate court because petitioner brought a claim of ineffective assistance of appellate counsel. *See Garcia v. Keane*, 973 F. Supp. 364, 370 (S.D.N.Y. 1997) (recognizing that "coram nobis review of ineffective assistance of appellate counsel claims is in the appellate tribunal where the allegedly deficient representation occurred" (internal quotation marks and citation omitted)).

On May 9, 2013, petitioner filed the instant § 2254 habeas petition.[3] (Pet. at ¶ 1.) In the petition, he challenges his 1993 murder conviction and seeks release from custody on three separate grounds: (1) ineffective assistance of trial counsel; (2) the state court's erroneous denial of forensic testing; and (3) his actual innocence. (*See id.* at ¶ 13.) Recognizing that petitioner's claim was potentially barred by the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the court ordered petitioner to show cause why his petition should not be dismissed as time-barred. (ECF No. 3, Order to Show Cause ("Show Cause Order").) Specifically, the court directed petitioner to provide (*inter alia*): (1) a copy of a November 15, 2011 letter from trial counsel (the "11/15/11 Letter") purportedly containing new evidence that serves as the factual predicate for his habeas petition; (2) an

---

[3] Although the petition was received by the district court clerk on May 9, 2013, petitioner declared under penalty of perjury in the petition itself that he delivered the document to prison authorities for mailing on May 1, 2013. (Pet. at p. 6.) In the pro se habeas context, the date the prisoner provides the document to prison officials for mailing — rather than the date of receipt in a clerk's office — is generally considered the appropriate filing date. *See Adeline v. Stinson*, 206 F.3d 249, 251 n.1 (2d Cir. 2000) ("When a prisoner is proceeding *pro se,* as petitioner then was, federal courts generally consider his or her petition for habeas corpus to have been filed as of the date it was given to prison officials for forwarding to the court clerk."); *see also* Rule 3(d) of the Rules Governing § 2254 Cases in the United States District Courts. Because nothing turns on the discrepancy in this case, the court will consider the petition filed on the earlier of the two dates, May 1, 2013.

explanation of how the letter provides a factual predicate for any of his claims; and (3) a description of his efforts to discover the facts underlying his claims. (*Id.* at 8.) The court also directed petitioner to provide any facts or evidence indicating whether statutory tolling applies to his claims. (*Id.* at 6.)

Petitioner subsequently filed an affirmation in which he discussed the 11/15/11 Letter and how it supported his claim of actual innocence, though not how it supported his other two claims. (ECF No. 7, Petitioner Affidavit ("Pet. Aff.").) The letter was attached to the affirmation as an exhibit. (*Id.*, Ex. B.) The court then ordered respondent to file a complete and entire answer or other pleading in response to the petition within 60 days. (ECF No. 8, Order to Show Cause.) Respondent filed an affidavit and memorandum of law in opposition to the petition arguing that it was time-barred (ECF No. 10, Affidavit and Memorandum in Opposition to Petition for Writ of Habeas Corpus ("Def. Aff." And "Def. Resp.")), to which petitioner replied.[4] (ECF No. 13, Reply ("Pet. Reply").)

---

[4] Although petitioner has apparently been released on parole (*see* ECF No. 16, Notice of Change of Address; https://www.parole.ny.gov/ (New York State Division of Parole site revealing that petitioner is on "active" parole status)), he is still "in custody" for purposes of 28 U.S.C. § 2254. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963) ("While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute . . . ."); *Eisemann v. Herbert*, 401 F.3d 102, 105 (2d Cir. 2005) ("The District Court and [petitioner's] counsel indicated that

4

The court will address whether petitioner is entitled to: (1) statutory tolling; (2) equitable tolling; or (3) relief based on a showing of actual innocence.

**DISCUSSION**

## I.   *AEDPA's Statute of Limitations*

A petition for a writ of habeas corpus filed by a person in state custody is governed by AEDPA, which imposes a one-year statute of limitations for seeking federal habeas relief from a state court judgment. *See* 28 U.S.C. § 2244(d)(1). Pursuant to AEDPA, the limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[petitioner] has either been released on parole or is soon to be released. Even if he has been released on parole, he would be 'in custody' for purposes of 28 U.S.C. § 2254.").

§ 2244(d)(1).  Of these provisions, only § 2244(d)(1)(D) —
concerning new evidence — is at issue in this case.

Determining the date on which the factual predicate for
a habeas claim is first discoverable requires a "district court to
analyze the factual bases of each claim and to determine when the
facts underlying the claim were known, or could with due diligence
have been discovered." *Rivas v. Fischer*, 687 F.3d 514, 534 (2d
Cir. 2012). A factual predicate consists only of the "vital facts"
underlying a claim.  *Id.* at 535.  The Second Circuit has explained
that facts vital to a habeas petition are "those without which the
claim would necessarily be dismissed under Rule 4 of the Rules
Governing § 2254 Cases in the United States District Courts" (which
requires a district court to dismiss a § 2254 petition if it
plainly appears a petitioner is not entitled to relief).  *Id.*

AEDPA also contains a tolling provision that tolls the
statute of limitations during the pendency of a properly-filed
state court post-conviction petition.  *See id.* § 2244(d)(2) ("The
time during which a properly filed application for State post-
conviction or other collateral review with respect to the pertinent
judgment or claim is pending shall not be counted toward any period
of limitation under this subsection.").

## II.  *Statutory Tolling*

The court will initially address whether petitioner is
entitled to statutory tolling.  First, the court will evaluate

whether the limitation period was tolled pursuant to § 2244(d)(2) because of a properly filed and pending state court post-conviction petition. Second, the court will address whether petitioner is entitled to statutory tolling due to new evidence pursuant to § 2244(d)(1)(D).

A.   Tolling under § 2244(d)(2)

Petitioner's conviction became final on February 13, 1996, upon the expiration of the 90-day period for seeking review by the United States Supreme Court of the New York Court of Appeals' denial of relief on November 15, 1995. *See Gonzalez v. United States*, 792 F.3d 232, 234 (2d Cir. 2015) ("Where a defendant does not seek Supreme Court review, a conviction becomes final when the time to seek such review expires, 90 days from the order affirming the conviction."). Because petitioner's conviction became final before the effective date of AEDPA, he was entitled to a one-year "grace period" from the effective date of AEDPA — until April 24, 1997 — to file his habeas petition. *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998) ("[W]e conclude that prisoners should have been accorded a period of one year after the effective date of AEDPA in which to file a first § 2254 petition or a first § 2255 motion."); *see also Rivas*, 687 F.3d at 534. Petitioner, however, did not file the instant § 2254 petition until May 1, 2013, some sixteen years after the one-year grace period had expired on April 24, 1997.

7

The court must consider whether, at some point before the expiration of the grace period, the statute of limitations was tolled due to a pending state court collateral attack on the conviction.  As noted above, AEDPA provides for tolling of the one-year period while a petitioner has a pending application for collateral review in state court with respect to the pertinent claim.  *See* § 2244(d)(2); *see also Lawrence v. Florida*, 549 U.S. 327, 331 (2007); *Sumpter v. Sears*, No. 09-CV-689, 2011 WL 31188, at *2 (E.D.N.Y. Jan. 5, 2011).  "[A] state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999).

Here, petitioner's first post-conviction petition — filed before his direct appeals failed, and before AEDPA was even enacted — was denied by the state trial court on September 12, 1995, and petitioner apparently did not appeal from that decision. (Pet. at ¶ 12; Def. Aff. at ¶ 17.)  No other event that could potentially trigger statutory tolling occurred until four months after the April 24, 2007 expiration of the grace period (on August 12, 1997, when petitioner filed his pro se petition for a writ of error *coram nobis* with the Appellate Division).  (Pet. at ¶ 12.) Accordingly, § 2244(d)(2) did not operate in this case to toll the statute of limitations for petitioner's claim.

B.    Tolling under § 2244(d)(1)(D)

A more challenging question, however, is whether petitioner's claim is timely under § 2244(d)(1)(D). Section 2244(d)(1)(D) states that AEDPA's one-year statute of limitations may run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner claims that a letter from his trial counsel — Michael C. Harrison — from November 15, 2011 contains new evidence that would prove his innocence. In the letter, which Mr. Harrison wrote to the New York State Department of Parole to advocate for petitioner's release, Mr. Harrison states:

> It is my recollection that on a police officer's memo book there was a description given which was three (3) to four (4) inches taller than Mr. Allah as well as a weight that would have caused the body proportions not to be that of Mr. Allah. I made an effort to introduce this document showing the person who left the murder scene was not Mr. Allah by way of two evidentiary mechanisms. . . . The court would not let the jury hear this evidence which leaves one with the manifest problem of denying admission of evidence that proves innocence.

(Pet. Aff., Ex. B.)

Petitioner does not clarify whether this letter is the "factual predicate" of his ineffective assistance claim, his claim related to forensic testing, or his actual innocence claim. It appears to the court, however, that petitioner contends the letter is the factual predicate of his actual innocence claim. Resolution

of that issue is unnecessary, however, because the information in the letter does not constitute new evidence.

The issue of the suspect description in the Harrison letter was litigated fully at trial. (ECF No. 10, Exs. 1-3, Transcript ("Tr.) 147-63.) Mr. Harrison's letter itself indicates that he fought unsuccessfully to introduce the suspect description through entries in a police officer's memo book at trial, and the trial transcript reveals an extended dialogue — taking place both before the jury and during a sidebar — during which Mr. Harrison and the prosecutor argued over whether the description could be presented to the jury or employed to cross-examine one of the investigating police officers. (*Id.*)

Accordingly, the factual predicate underlying petitioner's habeas petition was known to petitioner at the time of his trial, and thus cannot be used to toll the one-year statute of limitations under § 2244(d)(1)(D). *See Rivas*, 687 F.3d at 535-37 (information that was discovered and part of the trial record could not qualify as new evidence); *Holden v. Griffin*, No. 15-CV-4548, 2015 WL 5793642, at *2-3 (E.D.N.Y. Sep. 30, 2015) (facts underlying petitioner's claim that had been previously raised during direct appeal were not newly discovered evidence); *see also Wright v. Woodford*, 32 F. App'x 953 (9th Cir. 2002) ("The district court properly determined that § 2244(d)(1)(D) did not apply because the record reflects that [petitioner] knew about the 'new'

evidence at the time of trial."); *Davis v. Bradt*, No. 10-CV-3587, 2013 WL 4647615, at *2 (E.D.N.Y. Aug. 28, 2013) ("[The] limitations period begins to run from the date a petitioner is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim." (internal quotation marks and citation omitted)).

The fact that petitioner may not have understood the legal significance of the suspect description until learning of Mr. Harrison's November 15, 2011 letter is irrelevant, as § 2244(d)(1)(D) "deals only with the discovery of predicate facts, not their legal significance." *Patel v. Martuscello*, No. 10-CV-4804, 2011 WL 703943, at *3 (E.D.N.Y. Feb. 16, 2011); *Adams v. Greiner*, 272 F. Supp. 2d 269, 274 (S.D.N.Y. 2003) ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." (internal quotation marks and citation omitted)); *see also Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (same); *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) (same).

Petitioner also appears to suggest that his trial attorney, Mr. Harrison, was threatened at the time of trial into not presenting the witness description at issue. (Pet. Reply at 6-8.) Mr. Harrison's November 15, 2011 letter never so much as hints that he was threatened. (Pet. Aff., Ex. B.) Neither do the

other letters from Mr. Harrison that petitioner has attached to his affirmation. (Pet. Aff., Exs. A-C.) Petitioner instead supports his assertion about threats to Mr. Harrison with two pieces of evidence. The first is an affidavit from his wife, Elizabeth Rodriguez, which provides: "Harrison stated he was told not to present a police memo proving Mr. Allah's innocence to the jury, or there would be consequences." (Pet. Aff., Ex. D.) The second is an affirmation from his attorney in his parole proceedings who states that, in a conversation she had with Mr. Harrison, he explained that "he felt threatened and was not able to present pertinent evidence regarding the description of the offender to the jury." (*Id.*)

Petitioner's argument that the purported threats against Mr. Harrison constitute new evidence is unavailing. First, nothing in the trial record supports the assertion that threats were made. The trial transcript suggests that the judge heard out the parties and issued a ruling based on New York evidentiary law. There is no indication in the transcript of malice toward Mr. Harrison as the parties discussed the suspect description. (Tr. 147-63.) Indeed, the judge appeared receptive to defense counsel's proposed potential avenues that might have permitted the introduction of the contents of the suspect description. At one point, the judge directly confronted the officer being cross-examined by Mr. Harrison about the suspect description. (Tr. 155-56 ("THE COURT:

Just a minute. Look at the report. Read it to yourself. The next question I think that counsel wishes to ask is whether it refreshes your recollection as to whether or not you received a description of the perpetrator. Look at it and tell us if it does refresh your recollection.").)[5]

Second, as noted above, Mr. Harrison himself — in the three letters attached to the petition — does not once mention any threats. (See Pet. Aff., Exs. A-C.) Third, petitioner nowhere asserts that he lacked knowledge about the purported threats to Mr. Harrison at the time of trial. Relatedly, petitioner's wife's affidavit indicates that her conversations with Mr. Harrison — during which she purportedly learned about the threats — prompted Mr. Harrison to write letters to the parole board. (See Pet. Aff., Ex. D.) Mr. Harrison's letters were all written in 2011. (See Pet. Aff., Exs. A-C.) Both petitioner and his wife were "cc'd" on two of these letters, including the November 15, 2011 letter. (See

_____

[5] Petitioner appears to argue that there was a distinct off-the-record discussion about the suspect description that occurred in the judge's chambers. (Pet. Reply at 5.) But the transcript indicates that the parties' entire discussion about the suspect description occurred on the record. The parties do not suggest at any time during the discussion about the suspect description that it had been broached at any earlier time. Additionally, once the officer came off the stand and the jury had been dismissed for the day, Mr. Harrison — who initially sought to retain the right to recall the officer — dropped that request. (Tr. 163 ("MR. HARRISON: Your Honor, as a matter of fact, I do have one thing, if I may. I am not going to hold the officer that was just on the stand, McMullen, for the defense case. I don't want to – I'm withdrawing that.").) It is therefore unlikely that further discussions about the letter occurred off the record.

Pet. Aff., Ex. B.)  Petitioner, then, apparently possessed the letters over one year before he brought the instant petition in May 2013.  Section 2244(d)(1)(D) provides, as relevant here, that the one-year statute of limitations begins on the date that the factual predicate of the claim could have been discovered with due diligence.  Consequently, even granting petitioner the benefit of every doubt about when he discovered the threat and assuming there is sufficient evidence to indicate that a threat was made, petitioner's wife's letter and the timing of Mr. Harrison's letters provide strong evidence that the petition would still be untimely.

### III. *Equitable Tolling*

The one-year limitation period may also be tolled for equitable reasons, in situations where strict adherence to the statutory requirements would result in injustice.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (holding that the one-year limitation period is "subject to equitable tolling in appropriate cases"); *see also Rodriguez v. Bennett*, 303 F.3d 435, 438 (2d Cir. 2002) (same).  "To be entitled to equitable tolling, [a petitioner] must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Lawrence*, 549 U.S. at 336 (internal quotation marks and citation omitted).

Petitioner has the burden to establish that he exercised reasonable diligence in discovering the factual predicate of his

habeas claims. *See Shabazz v. Filion*, No. 02-CV-0939, 2006 WL 2792741, at *5 (N.D.N.Y. Sep. 26, 2006) (collecting cases). Petitioner similarly must "demonstrate a causal relationship between the extraordinary circumstances . . . and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding." *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (internal quotation marks, alteration and citations omitted). "The term 'extraordinary' does not refer to the uniqueness of the petitioner's circumstances, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Id.* at 231-32 (internal quotation marks and citation omitted). Moreover, mere ignorance of the law by a pro se inmate does not constitute an extraordinary circumstance for the purposes of satisfying AEDPA. *See Sanzone v. Goode*, No. 10-CV-4431, 2011 WL 3625544, at *3 (E.D.N.Y. Aug. 12, 2011) ("Ignorance of the law by a pro se petitioner does not constitute an extraordinary circumstance that warrants equitable tolling.").

This court found no basis to equitably toll the one-year limitation period prescribed by AEDPA when it first considered the instant petition and ordered petitioner to inform the court of any good faith basis for doing so. (*See* Show Cause Order). Petitioner alleges that the November 15, 2011 trial counsel letter containing

evidence of his actual innocence was not made known to him until
shortly before he filed his habeas petition, so the one-year
limitation period should not have begun running until that date.
As discussed above, however, the letter only recites information
that was part of the public record for more than 20 years. Even
if the letter did include some new information that could
potentially aid petitioner, neither the letter nor petitioner's
affirmation filed alongside it contain any information that would
tend to support the assertion that petitioner has faced the sort
of extraordinary obstacles to timely filing that are necessary to
equitably toll AEDPA's statute of limitations. Petitioner is
therefore not entitled to equitable tolling.

### IV. *Actual Innocence*

Finally, petitioner argues that his habeas petition
should be granted because the November 15, 2011 letter proves he
is actually innocent of the crime for which he was convicted.
(Pet. at ¶ 14.) Actual innocence, "if proved, serves as a gateway
through which a petitioner may pass whether the impediment is a
procedural bar . . . , or, as in this case, expiration of the
statute of limitations." *McQuiggin v. Perkins*, 133 S. Ct. 1924,
1928 (2013). The requisite showing of actual innocence will take

the habeas petition out of the statute of limitations, regardless of how much time has passed since the conviction.[6]

However, "a claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas*, 687 F.3d at 541 (citing *House v. Bell*, 547 U.S. 518, 521 (2006)). A "credible" claim of actual innocence consists of "'*new reliable evidence* — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.'" *Id.* (emphasis added) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538). This criteria for presenting a claim of actual innocence is often referred to as the *Schlup* standard.

Petitioner submits that the witness description at issue — whose source was never firmly established at trial (Tr. 147-63)

---

[6] In light of the resolution the court reaches in this petition, there is no need to resolve the extraordinarily fraught issue of whether petitioner could pursue a freestanding actual innocence claim. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *DiMattina v. United States*, 949 F. Supp. 2d 387, 418 (E.D.N.Y. 2013) (providing thorough discussion of the conflict in the courts over whether collateral relief "can be granted based on [a]n independent claim of innocence").

— demonstrates his innocence. A witness purportedly described the perpetrator as three to four inches taller than petitioner and with a different body type. (*See* Pet. Aff, Ex. B.) Petitioner's assertion of actual innocence is supported only by a description provided by this witness, which — as discussed earlier — was already part of the trial record more than 20 years ago. The witness description is not "new reliable evidence" within the meaning of *Schlup*. *See* 513 U.S. at 324. Indeed, there is nothing "new" about the evidence at all.

The Supreme Court recently stated that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial. . . .'" *McQuiggin*, 133 S.Ct. at 1936 (quoting *Schlup*, 513 U.S. at 316).[7] Here, petitioner has failed to provide *any* new evidence of his actual innocence, let alone the strong evidence required by the Supreme Court in these circumstances. The description at issue — even if it accurately reflects an unnamed witness's description provided to law enforcement personnel — simply does not carry enough weight to cause the court to lose confidence in the outcome of petitioner's trial. As discussed further below, there was sufficient evidence at trial by the

---

[7] In *McQuiggin*, the Court rejected the actual innocence claim of a petitioner also relying on "new evidence" constituting information "substantially available to [petitioner] at trial." 133 S.Ct. at 1936 (internal quotation marks and citation omitted).

victim's neighbors describing an individual matching petitioner's physical characteristics. (Tr. 47-48, 239-40, 415, 421-23.)

To the extent that a purported threat made to Mr. Harrison can be considered new evidence, such evidence also falls far short of the *Schlup* standard. Even if Mr. Harrison was threatened — which, as the court noted earlier, is far from clear, *see supra* Part II.B — the threat only appears to be related to the witness description. (*See* Pet. Aff., Ex. B.) Because the court has already concluded that this witness description — which itself is not new evidence — does not cast serious doubt on the outcome of petitioner's trial, neither can the purported threat.

The purportedly new evidence at issue here is also especially unconvincing in light of the considerable evidence against petitioner, which the appellate court on his direct appeal characterized as "overwhelming." *Allah*, 631 N.Y.S.2d at 248. To cite just a few limited examples of the government's trial evidence, there was testimony that petitioner had left a party only hours before the murder with the victim. (Tr. 326-27.) A neighbor of the victim and her fiancé — Zaida Torres and Ramon German — testified that, on the morning of the murder for which petitioner was convicted, they heard loud noises and a scuffle coming from an adjacent apartment. (Tr. 34, 234.) Both Torres and German subsequently went into the hallway and observed petitioner nervously leave the victim's apartment with a towel

covering his hand and what appeared to be an object.  (Tr. 38-40, 238, 243, 245-46.)  Petitioner then walked directly by Torres, who observed his body and face from approximately a foot and a half away.  (Tr. 41.)  German viewed petitioner from approximately 14 feet away. (Tr. 242.)  Torres asked petitioner if her neighbor — the victim — was in his apartment.  (Tr. 38, 240-41.)  Petitioner responded that he was (Tr. 38, 240-41), and then walked quickly or ran toward an exit.  (Tr. 39, 244.)  Torres immediately entered the victim's apartment and discovered the victim — who died soon thereafter — bleeding from multiple stab wounds.  (Tr. 44-45, 120.)  Both Torres and German independently and separately picked petitioner out of a lineup that was conducted the morning following the murder.  (Tr. 48-49, 252-55.)

The witness description from Mr. Harrison's letter, which was available at the time of trial, is not new evidence.  *See Rivas*, 687 F.3d at 541 (recognizing that a "credible" claim of actual innocence consists of "*new reliable evidence* — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial" (emphasis added) (internal quotation marks and citation omitted)).  In addition, neither the witness description nor the purported evidence of threats to Mr. Harrison is "so strong that a court cannot have confidence in the outcome of the trial . . . ."

*McQuiggin*, 133 S.Ct. at 1936 (internal quotation marks and citation omitted).

**CONCLUSION**

For the foregoing reasons, this petition for a writ of habeas corpus is dismissed in its entirety as time-barred. The Clerk of the Court is respectfully directed to enter judgment in favor of respondent, close this case, and serve a copy of this order on the pro se petitioner at his last known address.

Pursuant to Fed. R. App. P. 22(b) and 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue because petitioner has not made a "substantial showing" of a denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

**Dated:** Brooklyn, New York
January 27, 2016

_____ /s/ _____
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York